IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANSSEN PHARMACEUTICA N.V., | ) | |
| ORTHO-McNEIL-JANSSEN | ) | |
| PHARMACEUTICALS, INC., and | ) | |
| SYNAPTECH, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Action No._____ |
| | ) | |
| SANDOZ, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Janssen Pharmaceutica N.V., Ortho-McNeil-Janssen Pharmaceuticals, Inc. (collectively, "Janssen"), and Synaptech, Inc. (collectively, "Plaintiffs"), by their attorneys, for their complaint against Sandoz, Inc. ("Sandoz"), allege as follows:

### The Parties

1.     Plaintiff Janssen Pharmaceutica N.V., a wholly owned subsidiary of Johnson & Johnson, is a corporation organized and existing under the laws of Belgium and has its principal place of business at Turnhoutseweg 30, B-2340 Beerse, Belgium.

2.     Plaintiff Ortho-McNeil-Janssen Pharmaceuticals, Inc., a wholly owned subsidiary of Johnson & Johnson, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.

3.     Plaintiff Synaptech, Inc. ("Synaptech") is a company organized and existing under the laws of the State of New York and has its principal place of

business care of Schwartz & Salomon, P.C., 225 Broadway, New York, New York 10007.

        4.       Upon information and belief, Defendant Sandoz is a corporation organized and existing under the laws of the State of Colorado and has its principal place of business at 506 Carnegie Center, Suite 400, Princeton, NJ 08540.  Upon information and belief, Sandoz does business in the State of Delaware.  Sandoz manufactures, markets, and sells many pharmaceutical products, including numerous generic prescription drug products manufactured and sold pursuant to approved abbreviated new drug applications, to customers in the State of Delaware.  In addition, upon information and belief, Sandoz has availed itself of the benefits of this forum, including the filing of claims and counterclaims in this forum.

**Jurisdiction and Venue**

        5.       This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, for infringement of United States Patent No. 4,663,318 ("the '318 patent").  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

        6.       Sandoz is subject to personal jurisdiction in this judicial district by virtue of, *inter alia*, its having conducted business in the State, having availed itself of the rights and benefits of Delaware law, and having engaged in substantial and continuing contacts with the State.  In addition, Sandoz has consented to the jurisdiction of and made claims and counterclaims in the United States District Court for the District of Delaware in connection with other lawsuits.

7.        Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**Regulatory Requirements for Approval of New and Generic Drugs**

8.        Any person wishing to market a pioneering drug – that is, a new drug that has not previously been approved by FDA – must first file a New Drug Application ("NDA") with FDA demonstrating that the drug is safe and effective for its intended use. 21 U.S.C. § 355(b). To secure approval of an NDA, the NDA applicant must, among other things, collect and submit to FDA extensive animal and human clinical trial data at a substantial cost of time and money.

9.        A person wishing to market a generic copy of a pioneering drug that previously has been approved by FDA may follow a truncated approval process by filing an abbreviated new drug application for a generic version of the drug. In the ANDA, the applicant must demonstrate, among other things, bioequivalence of the generic copy of the pioneering drug. 21 U.S.C. § 355(j)(2)(A)(iv). To demonstrate bioequivalence, the ANDA applicant must show that the rate and extent of absorption of the therapeutic ingredient in the generic drug does not significantly differ from that in the pioneering drug, or, if the rate of absorption differs, that such difference is intentional, is reflected in the proposed labeling, is not essential to the attainment of effective body drug concentrations on chronic use, and is considered medically insignificant for the drug. 21 U.S.C. § 355(j)(8)(B).

10.        However, unlike an NDA applicant, an ANDA applicant is not required to include safety and effectiveness data. The ANDA applicant is not required, for example, to conduct well-controlled clinical trials concerning the safety and

effectiveness of the proposed drug.  Instead, the ANDA applicant is permitted to piggy-back on the safety and effectiveness data developed and submitted by the approved NDA holder.  21 U.S.C. § 355(j).

11.    Nor does an ANDA applicant establish any new conditions of use for the proposed drug product.  Instead, an ANDA applicant may seek approval only for conditions of use that previously have been approved in connection with an approved NDA.  21 U.S.C. § 355(j)(2)(A)(i).

12.    No person may market in the United States a new drug without an approved NDA or a generic version of a drug without an approved ANDA.  21 U.S.C. § 355(a).

## Plaintiffs' Approved Drug Product

13.    Janssen is the holder of an approved new drug application, NDA No. 21-169, for galantamine hydrobromide tablets.  That NDA was approved by FDA on February 28, 2001 and covers three strengths of tablet – Eq. 4 mg base, 8 mg base, and 12 mg base.  The sole indication or condition of use for which galantamine hydrobromide tablets are approved in NDA No. 21-169 is the treatment of mild to moderate dementia of the Alzheimer's type.

14.    Pursuant to FDA's approval, Janssen currently markets galantamine hydrobromide tablets for the treatment of mild to moderate dementia of the Alzheimer's type under the trademark RAZADYNE®.  Until 2005, Janssen marketed its galantamine hydrobromide tablets in the United States under the trademark REMINYL®.

15.     FDA has listed the '318 patent in the Orange Book – formally known as <u>Approved Drug Products With Therapeutic Equivalence Evaluations</u> – in connection with NDA No. 21-169.

16.     The '318 patent qualifies for listing in the Orange Book in connection with NDA No. 21-169 because it claims an approved use of the drug product that is the subject of that NDA.  Sandoz has never challenged the listing of the '318 patent in the Orange Book.

### Sandoz's ANDA

17.     Sandoz has represented that on or before July 3, 2008, it submitted to FDA an ANDA (ANDA No. 77-589) and paragraph IV certifications under section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 355(j)(2)(A)(vii)(IV), for galantamine hydrobromide tablets purportedly bioequivalent to Plaintiffs' RAZADYNE® products.  The purpose of Sandoz's ANDA and paragraph IV certifications is to obtain approval under section 505(j) of the FDCA to engage in the commercial manufacture and sale of its proposed galantamine hydrobromide tablets before the expiration of the patents listed in the Orange Book for Janssen's NDA No. 21-169.  Hence, Sandoz's purpose in submitting ANDA No. 77-589 is to market in the United States the galantamine hydrobromide products described therein before expiration of the '318 patent.

18.     Upon information and belief, the sole condition of use for which Sandoz seeks approval in its ANDA No. 77-589 for its proposed galantamine hydrobromide tablets is the treatment of mild to moderate dementia of the Alzheimer's type, the same condition of use as that approved in Janssen's NDA No. 21-169.

19.    Upon information and belief, the sole indication set forth in the proposed labeling submitted by Sandoz in its ANDA No. 77-589 for its proposed galantamine hydrobromide tablets is the treatment of mild to moderate dementia of the Alzheimer's type, the same indication as that set forth in the approved labeling for Plaintiffs' REMINYL® and RAZADYNE® tablets.

## Count 1:  Patent Infringement

20.    Plaintiffs reallege paragraphs 1 through 19 above as if fully set forth herein.

21.    On May 5, 1987, the United States Patent and Trademark Office duly and legally issued the '318 patent, entitled "Method of Treating Alzheimer's Disease."  The term of the '318 patent runs through December 14, 2008.  A true and correct copy of the '318 patent is attached hereto as Exhibit A.

22.    Synaptech is the owner of the '318 patent.

23.    Janssen is the exclusive licensee under the '318 patent, pursuant to an exclusive license agreement between Synaptech and Janssen, of the right to develop, make, have made, keep, use, market, sell, and/or dispose of certain pharmaceutical preparations containing galantamine hydrobromide to treat Alzheimer's disease in the United States and other territories.  Pursuant to that exclusive license, Janssen currently markets galantamine hydrobromide tablets in the United States under the trademark RAZADYNE® and previously marketed galantamine hydrobromide tablets in the United States under the trademark REMINYL®.  The conditions of use for which RAZADYNE® and REMINYL® are approved fall within one or more of the claims of the '318 patent.

{00235197;v1}

24.    As exclusive licensee, Janssen is authorized to enforce the '318 patent.

25.    The conditions of use for which Sandoz seeks approval in its ANDA No. 77-589 fall within one or more of the claims of the '318 patent. If approved, use of Sandoz's proposed galantamine hydrobromide products in accordance with the proposed labeling for those products submitted in ANDA No. 77-589 would constitute a use of the product claimed in one or more of the claims of the '318 patent.

26.    Sandoz is liable for infringement of the '318 patent under 35 U.S.C. § 271(e)(2)(A) by virtue of its filing ANDA No. 77-589 with a paragraph IV certification seeking FDA approval of ANDA No. 77-589 prior to the expiration of the '318 patent.

27.    Upon information and belief, if approved, Sandoz's galantamine hydrobromide products for which approval is sought in Sandoz's ANDA No. 77-589 will be administered to human patients in a therapeutically effective amount for treatment of mild to moderate dementia of the Alzheimer's type, which administration would constitute direct infringement of the '318 patent. Upon information and belief, this infringement will occur at Sandoz's behest, with its intent, knowledge, and encouragement, and Sandoz will actively induce, encourage, aid, and abet this administration with knowledge that it is in contravention of Plaintiffs' rights under the '318 patent.

28.    Sandoz's offer for sale or sale in the United States, or importation into the United States, prior to expiration of the '318 patent, of the galantamine hydrobromide products for which approval is sought in ANDA No. 77-589, would

{00235197;v1}

actively induce and contribute to infringement of the '318 patent, and Sandoz would be liable as an infringer under 35 U.S.C. §§ 271(b) and/or (c). Sandoz's use in the United States of the galantamine hydrobromide products in accordance with the labeling for which approval is sought in ANDA No. 77-589 prior to expiration of the '318 patent would infringe the '318 patent, and Sandoz would be liable as an infringer under 35 U.S.C. § 271(a).

29.     Sandoz had actual and constructive notice of the '318 patent prior to filing its ANDA No. 77-589, and Sandoz's infringement of the '318 patent has been, and continues to be, willful.

30.     Plaintiffs will be irreparably harmed if Sandoz is not enjoined from infringing or actively inducing or contributing to infringement of the '318 patent. Plaintiffs do not have an adequate remedy at law.

### Prayer For Relief

WHEREFORE, Plaintiffs respectfully seek the following relief:

A.     A judgment that Sandoz has infringed the '318 patent under 35 U.S.C. § 271(e)(2)(A);

B.     A judgment providing that the effective date of any FDA approval of the Sandoz ANDA No. 77-589 for galantamine hydrobromide Eq. 4 mg base, 8 mg base, and 12 mg base tablets shall not be earlier than the expiration date of the '318 patent;

C.     A judgment declaring that Sandoz's manufacture, use, sale, offer for sale, or importation into the United States of the galantamine hydrobromide products for which approval is sought in ANDA No. 77-589 would

constitute infringement of the '318 patent, or would induce or contribute to such infringement, pursuant to 35 U.S.C. § 271 (a), (b), and/or (c);

D.      A permanent injunction enjoining Sandoz and its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from making, using, selling, or offering to sell in the United States, or importing into the United States, the galantamine hydrobromide tablets for which approval is sought in ANDA No. 77-589, or any galantamine hydrobromide product that infringes or induces or contributes to the infringement of the '318 patent, until expiration of that patent;

E.      A finding that this is an exceptional case, and an award of attorneys' fees in this action pursuant to 35 U.S.C. § 285;

F.      An award of costs and expenses in this action; and

G.      Such further and other relief as this Court determines to be just and proper.

Of Counsel:

George F. Pappas
Roderick R. McKelvie
Christopher N. Sipes
Kurt G. Calia
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-662-6000
Fax: 202-662-6291

Patricia C. Lukens
Office of General Counsel
Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
Tel: 732-524-2805
Fax: 732-524-5866

DATED:  August 13, 2008

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Tel:  302-654-1888
Fax: 302-654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiffs*

# EXHIBIT A

# United States Patent [19]

## Davis

[11]  Patent Number:  **4,663,318**

[45]  Date of Patent:  **May 5, 1987**

[54]  **METHOD OF TREATING ALZHEIMER'S DISEASE**

[76]  Inventor:  **Bonnie Davis,** 17 Seacrest Dr., Huntington, N.Y. 11743

[21]  Appl. No.: **819,141**

[22]  Filed:  **Jan. 15, 1986**

[51]  Int. Cl.³ ............................................. **A61K 31/55**
[52]  U.S. Cl. ..................................................... **514/215**
[58]  Field of Search .......................................... 514/215

[56]  **References Cited**
**PUBLICATIONS**

Chem. Abst. (81)–72615z (1974).
Chem. Abst. (86)–115157z (1977).

Horshenson et al. J. Med. Chem. vol. 29, No. 7, 7/86, pp. 1125–1130.
Kendall et al., J. Chem. & Hospital Pharmacol., (1985) 10–327–330.
S. Chaplygina et al., J. of Highest Nervous Activity vol. XXIV 1976 Issue 5, pp. 1–4.
Krause, J. of Highest Nervous Activity, vol. XXII, 1974, Issue 4.

*Primary Examiner*—Stanley J. Friedman
*Attorney, Agent, or Firm*—Ladas & Parry

[57]  **ABSTRACT**

Alzheimer's disease may be treated with galanthamine.

**7 Claims, No Drawings**

4,663,318

1

## METHOD OF TREATING ALZHEIMER'S DISEASE

### GENERAL FIELD OF THE INVENTION

The present invention relates to a novel method of treating Alzheimer's disease and more particularly to a treatment using galanthamine.

### BACKGROUND ART

Galanthamine and acid addition salts thereof have, for many years, been known to have anticholinesterase properties. Cozanitis in Anaesthesia 29 163–8 (1974) describes the effect of galanthamine hydrobromide on plasma cortisol of patients receiving relaxant anaesthesia and Cozanitis et al in Acta Anesth. Scand. 24:166–168 (1980) describe the effect of galanthamine on plasma ACTH values during anaethesia. These studies showed an increase in both plasma cortisol and plasma ACTH when galanthamine was administered to patients together with atropine.

Il'yuchenok et al (Chemical Abstracts 70 36296K describe the appearance of θ-rhythm on an electroencephalogram when galanthamine is administered intravenously to rabbits.

Increase in short-term memory in dogs by use of galanthamine is described by Krauz in Chemical Abstracts 81 72615Z.

The antagonistic effect of galanthamine to scopolamine-induced amnesia in rats is described by Chaplygina et al in Chemical Abstracts 86 115157Z, and in Zhurnal Vysshei Nervnoi Deiatelnosti imeni P. Pavlova (MOSKVA) 26:1091-1093, 1976.

Alzheimer's disease, presenile dementia, causes much distress not only to those suffering from the disease, but also those who are close to them. The custodial care of advanced victims of the disease is a tremendous expense to society. At present, there is no effective means of improving the functional status of persons with the disease.

It is an object of the present invention to improve the cognitive function of patients with Alzheimer's disease.

### SUMMARY OF THE INVENTION

A method for treating Alzheimer's disease and related dementias which comprises administering to mammals, including humans, an effective Alzheimer's disease cognitively-enhancing amount of galanthamine or a pharmaceutically-acceptable acid addition salt thereof. A radioactively-labelled form of the molecule may also serve as a diagnostic test for Alzheimer's disease.

### DETAILED DESCRIPTION OF THE INVENTION

Galanthamine can be administered in any convenient chemical or physcial form. For example, it may be administered as its hydrobromide, hydrochloride, methylsulfate or methiodide.

Galanthamine or its pharmaceutically-acceptable acid addition salts may be administered to a patient suffering from Alzheimer's disease orally or by subcutaneous or intravenous, injection, or intracerebroventricularly by means of an implanted reservoir. It may be necessary to begin at lower doses than are ultimately effective.

Galanthamine and its acid addition salts form crystals. They are in general only sparingly soluble in water

2

at room temperature and so injectible compositions are normally in the form of an aqueous suspension. If necessary, pharmaceutically-acceptable suspension aids may be employed. Typically, such a suspension will be employed at a concentration of 1–50 mg/ml more commonly 5–40 mg/ml, for example, 5–30 mg/ml or 10–40 mg/ml, typically 20–30 mg/ml of galanthamine. Typical dosage rates when administering galanthamine by injection are in the range 5–1,000 mg per day depending upon the patient. For example, divided doses in the range 0.5–5 mg/kg body weight per day may prove useful. Typically, one might administer a dosage of 50–300 mg per day to a patient of a body weight of 40–100 kg, although in appropriate cases such dosages may prove useful for patients having a body weight outside this range. In other cases, dosages as low as 10 mg and as high as 500 mg may be appropriate for persons in this body weight range.

Galanthamine or its pharmaceutically-acceptable acid addition salts may also be administered orally, for example, as an aqueous suspension or a solution in aqueous ethanol or as a solid such as a tablet or capsule. Suspensions or solutions for oral administration are typically of about the same concentration as those used for injections. However, it may be desirable when administering the drug orally to use a higher dosage rate than when administering it by injection. For example, dosages up to 2000 mg per day may be used, such as dosages in the range 100–600 mg per day. In preparing such tablets or capsules, standard tablet or capsulemaking techniques may be employed. The dosage rate of galanthamine or its pharmaceutically-acceptable salt will normally be in the same range as for oral administration of a liquid. If desired, a pharmaceutically-acceptable carrier such as starch or lactose may be used in preparing galanthamine tablets. Capsules may be prepared using soft galatine as the encapsulating agent. If desired, such capsules may be in the form of sustained release capsules wherein the main capsule contains microcapsules of galanthamine which release the contents over a period of several hours thereby maintaining a constant level of galanthamine in the patient's blood stream.

The following test provides a good animal model for Alzheimer's disease in humans: A selective lesion is placed in a subcortical nucleus (nucleus basalis of Meynert) with a resultant cortical cholinergic deficiency, similar in magnitude to that seen in early to moderate stage Alzheimer's disease. Numerous behavioral deficits, including the inability to learn and retain new information, characterizes this lesion. Drugs that can normalize these abnormalities would have a reasonable expectation of efficacyin Alzheimer's disease. Haroutunian, V, Kanof P, Davis, KL: Pharmacological alleviations of cholinergic-lesion-induced memory defects in rats. Life Sciences 37:945–952, 1985.

The following specific formulations may find use in treatment of Alzheimer's disease:

Tablets or capsules containing 5, 10 and 25 mg galanthamine hydrobromide to be taken four times a day, or a sustained-release preparation delivering an equivalent daily dose.

Parenteral solution containing 5 mg/ml.

Liquid formulation for oral administration available in 5 mg/5 ml and 25 mg/5 ml concentration.

There have been reports that galanthamine can cause cardiac arrythmias. In such cases, it may be desirable to

4,663,318

3

administer galanthamine in conjunction with another drug such as propanthelinbromide to control such arrythmias.

I claim:

1. A method of treating Alzheimer's disease and related dementias which comprises administering to a patient suffering from such a disease a therapeutically effective amount of galanthamine or a pharmaceutically-acceptable acid addition salt thereof.

2. A method according to claim 1, wherein the administration is parenteral at a daily dosage of 5–1,000 mg of galanthamine or a pharmaceutically-acceptable acid addition salt thereof.

4

3. A method according to claim 2, wherein said dosage rate is 50–300 mg per day.

4. A method according to claim 1, wherein said administration is oral and is in the range 10–2000 mg per day.

5. A method according to claim 4, wherein said dosage rate of 100–600 mg per day.

6. A method according to claim 1, wherein galanthamine is administered at a dosage rate of 0.1 to 4 mg/kg body weight of a patient, parenterally.

7. A method according to claim 1, wherein galanthamine is administered intracerebroventricularly via an implanted reservoir at a dosage rate of 0.01 to 5.0 mg/kg day.

* * * * *

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JANSSEN PHARMACEUTICA N.V., ORTHO-McNEIL-JANSSEN PHARMACEUTICALS, INC., and SYNAPTECH, INC.

**DEFENDANTS**
SANDOZ, INC.

(b) County of Residence of First Listed Plaintiff        *
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

*The first-listed plaintiff is a Belgian corporation

(c) Attorney's (Firm Name, Address, and Telephone Number)
Steven J. Balick, ASHBY & GEDDES, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899 (302) 654-1888

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 35 U.S. Code
Brief description of cause:
Action arising under the patent laws of the United States.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Sue L. Robinson
DOCKET NUMBER 05-356-SLR

DATE
August 13, 2008

SIGNATURE OF ATTORNEY OF RECORD
*Steven J. Balick*

FOR OFFICE USE ONLY

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 5 1 1 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

_____ 8/13/08 _____
(Date forms issued)

X _Andrew Hubler_
(Signature of Party or their Representative)

X _Andrew Hubler_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action